JOHN E. ATTERBURY, Appellant and Respondent, v. TEMPLE STEPHENS COMPANY, a Corporation, Appellant, and NEWELL HAWKINS, Respondent.—No. 38899.—181 S. W. (2d) 659.

Division One, July 3, 1944.

6

*James P. Boyd* for plaintiff-appellant, John E. Atterbury.

*W. W. Barnes, Rendlen & White, Moser, Marsalek & Dearing* and *Theo. J. Krauss* for defendant-appellant, Temple Stephens Company.

8

*W. W. Barnes, Rendlen & White, Moser, Marsalek & Dearing* and *Theo. J. Krauss* for defendant-respondent, Newell Hawkins.

BRADLEY, C.—Action to recover $15,000 for personal injury. The jury returned a verdict for $2,000 against the corporate defendant, but found for Hawkins, the individual defendant. The corporate defendant appealed and plaintiff appealed from the judgment in favor of Hawkins. The appeals were allowed to the St. Louis Court of Appeals, but that court transferred the cause here for lack of jurisdiction. See Morton v. Southwestern Telegraph & Telephone Co. et al., 280 Mo. 360, 217 S. W. 831; Walsh v. Southwestern Bell Telephone Co. et al., 331 Mo. 118, 52 S. W. (2d) 839; Brown v. Reorganization Investment Co., 350 Mo. 407, 166 S. W. (2d) 476.

Temple Stephens Company, the corporate defendant, had a retail store in the City of Madison, Monroe County, Missouri, which store faced west on Main Street. Defendant Newell Hawkins, a young man, 27 years old at the time, was manager of the store. Plaintiff resided at nearby Holliday. Near the noon hour, June 2, 1941, plaintiff, with his two daughters, Elgelina and Mary Betty, drove to Madison to buy groceries at the corporate defendant's store. He and Elgelina went into the store; Mary Betty remained in the car parked in front of the store. While plaintiff was in the store, defendant Hawkins unrolled, on the concrete sidewalk in front of the store and along in front of the door at which plaintiff entered, some 40 or 50 feet of woven wire, one inch mesh, and four feet in width. When plaintiff came out of the store, shortly after he entered, he stepped in or on this wire, tripped, stumbled and fell, and received the injuries complained of.

Preliminary hypotheses omitted, plaintiff's instruction P-1 directed a verdict for him if the jury found:

"That Hawkins carelessly and negligently unrolled and stretched upon said sidewalk immediately in front of and adjacent to said west front door entrance and along the front of said store building, chicken wire fence of one inch mesh, approximately 48 inches in width and unrolled on said sidewalk some 40 or 50 feet in length, if you so find he did, and if you further find from the evidence that said chicken wire fencing so stretched, obstructed and made the passage dangerous to persons passing out of said store by way of said west front door, if you so find, and that defendant corporation, by and through its *agents, servants and employees,* and especially defendant Hawkins knew of the danger, if any, or by the exercise of ordinary care could have known of such danger, if any, and if you further find and believe from the evidence that defendant corporation, its *agents, servants, or employees,* including defendant Newell Hawkins, failed and neglected to give to plaintiff any *notice* while he was in said store and before he started to leave said store that the agents, servants and employees had stretched chicken wire fencing along said sidewalk and in front of said west door, and if you further find and believe from the evidence that plaintiff, while in the exercise of ordinary care for his own safety and without any knowledge that said chicken wire fencing had been stretched along said sidewalk and across and in front of the entrance to said front door, if you so find, and while passing out of said door and out upon said sidewalk became entangled in said chicken wire fencing and causing plaintiff to trip and fall with such force and violence as to throw plaintiff across and upon said sidewalk and into and upon said Main Street if you so believe, and that plaintiff was injured thereby, if you so believe, then your verdict should be for plaintiff and against the defendants" (italics ours). Defendants answered separately by general denials.

The court of its own motion, gave to the jury four prepared forms for verdict, as follows:

(1) "We, the jury, find the issues for the plaintiff and against both defendants and ▇▇▇ assess plaintiff's damages at the sum of ———— dollars. ———————— foreman.

(2) "We, the jury, find the issues in favor of both defendants, Temple Stephens Company, a corporation, and Newell Hawkins. ————————, foreman.

(3) "We, the jury, find the issues for the plaintiff and against the defendant Newell Hawkins, and we further find the issues in favor of defendant Temple Stephens Company, a corporation, and we assess plaintiff's damages at the sum of ———— dollars. ————————· foreman.

(4) "We, the jury, find the issues for the plaintiff and against the defendant, Temple Stephens Company, a corporation, and we further find the issues for the defendant Newell Hawkins, and we assess plaintiff's damages at the sum of ———— dollars. ———— foreman."
The jury used form (4).

▇▇ Appellant, Temple Stephens Company, the corporate defendant, filed motion for a new trial and in arrest contending that the judgment against it cannot stand "because the jury, by its verdict in favor of defendant, Newell Hawkins, exonerated said (corporate) defendant of negligence, and as appellant Temple Stephens could be liable only under the doctrine of respondeat superior, the exoneration of the servant, Hawkins, ipso facto, exonerated the master, Temple Stephens Company." See McGinnis v. Chicago, R. I. & P. R. Co., 200 Mo. 347, 98 S. W. 590; Stephens v. D. M. Oberman Mfg. Co., 334 Mo. 1078, 70 S. W. (2d) 899; Wright v. Hannan & Everitt, Inc., 336 Mo. 732, 81 S. W. (2d) 303; Oliver et ux. v. Morgan (Mo. Sup.), 73 S. W. (2d) 993; State ex rel. Shell Petroleum Corp. v. Hostetter et al., 348 Mo. 841, 156 S. W. (2d) 673; Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 162 S. W. (2d) 813.

Homer Lee Nichols, a young man, 20 years old at the time, was a clerk in the store and waited on plaintiff. At the time of the trial Nichols was in the Army and did not testify. When plaintiff was through trading, Nichols carried the groceries, etc., purchased to plaintiff's car, and much importance is given to the question as to whether Nichols *preceded* plaintiff, through door at which plaintiff entered, in going from the store to plaintiff's car. Plaintiff contends that there was substantial evidence that Nichols came out of the store ahead of him, and should have warned him of the wire, and that the judgment against the corporate defendant can be affirmed regardless of the verdict in favor of Hawkins.

But, plaintiff says that if, under the record, the judgment against the corporate defendant cannot be affirmed because of the verdict in favor of Hawkins, then in the interest of justice, the judgment

against the corporate defendant and the judgment in favor of Hawkins should be reversed and the whole cause remanded because the court committed reversible error in giving to the jury the forms for verdict, especially (3) and (4), because such were, in effect, "tantamount to an instruction" that the jury was authorized to find for one defendant and against the other.

It is contended, however, that plaintiff's instruction P-1 invited forms (3) and (4) for verdict, and, such being the situation, plaintiff cannot complain as to the forms. It is argued that "all of plaintiff's evidence tended to show that Newell Hawkins stretched the wire on the sidewalk and that he was the only employee of appellant Temple Stephens Company who knew anything about it and was in position to warn plaintiff of the wire. Plaintiff's theory of the case was limited solely to that issue. Plaintiff and his witnesses all testified that plaintiff came out of the store first and that Homer Nichols, another employee of appellant Temple Stephens Company, followed him out. There was no showing that Homer Nichols knew or could have known of the presence of the wire on the sidewalk in time to have warned plaintiff before he came into contact with it. Plaintiff is bound by his own testimony and the testimony of his witnesses tending to establish his theory of the case." Cited in support of such contentions are Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S. W. (2d) 600; Rucker v. Alton R. Co., 343 Mo. 929, 123 S. W. (2d) 24; Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S. W. (2d) 626.

Absent request, consent or invitation, or absent evidence of negligence other than by Hawkins, we think it was error to give the jury the forms for verdict (3) and (4). See Ruehling v. Pickwick-Greyhound Lines, ·337 Mo. 196, 85 S. W. (2d) 602; Cameron v. Howerton et al. (Mo. Sup.), 174 S. W. (2d) 206.

Did plaintiff, by his instruction P-1, invite the verdict forms as claimed? In the brief, respondent Hawkins says that "it is clearly evident from plaintiff's instruction P-1 that plaintiff sought to recover either on the ground that Hawkins was negligent or on the ground that some other employee of the Temple Stephens Company was negligent." The only parts in the instruction emphasized as supporting the contention that plaintiff invited the verdict forms are these, the word "especially", preceding the words "defendant Hawkins"; the word "including", preceding the words "defendant Newell Hawkins", and the clause "before he started to leave", preceding the words "said store." Also, it will be noted that the instruction concludes by directing, if the submitted hypotheses were found, a verdict "for plaintiff and against the defendants", the *plural*, and not against *either* defendant. We do not think that it can, in fairness, be said that plaintiff, by instruction P-1, invited the verdict forms complained of.

Should the judgment against the corporate defendant be sustained notwithstanding the verdict in favor of Hawkins?. For the negligent performance of duty by the servant, both the servant and the master are liable to third parties under the rule of respondeat superior, but where the servant is charged with the negligence causing the injury complained of, and both the servant and the master are joined as defendants, and the petition imputes the negligence of the servant to the master and relies *solely* on the negligence of *such* servant, then a verdict of the jury finding the servant not guilty of negligence, ipso facto, discharges the master, although the verdict is against the master. McGinnis v. Chicago, R. I. & P. R. Co., supra; Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 162 S. W. (2d) 813, l. c. 816, 817, and cases there cited. On the other hand, if the liability of the master is not predicated *solely* upon the negligence of the servant in whose favor a verdict has been found, but as well upon the negligence of another servant, then the verdict against the **master** will be sustained notwithstanding the verdict in favor of the servant. Devine case, supra, 162 S. W. (2d) l. c. 817.

It is true that plaintiff and all his witnesses who testified on the point, said that plaintiff came out of the store ahead of Nichols. But it is also true that Hawkins, a witness for defendants, testified that Nichols came out first. After alleging that Hawkins had negligently stretched the wire on the sidewalk in front of the store door, plaintiff alleged that:

"Defendant corporation, acting by and through its agents and servants, well knew that persons were in said store at the time of the negligent acts aforesaid (stretching the wire on the sidewalk, etc.) and would, in order to leave said store, be compelled to pass through said west door out and upon said sidewalk or by the exercise of ordinary care should have known that persons and customers were in said store at the time of carelessly and negligently stretching said woven wire fencing upon and along said sidewalk . . . defendant corporation, its *agents, servants and employees* carelessly and negligently failed, neglected and refused to notify or give to plaintiff, after he had entered said store building, any notice that they had so negligently stretched along, and over said sidewalk said woven wire fencing in the manner aforesaid; that plaintiff, after completing his purchase in said store, started to leave said store building without knowledge of the fact that the agents, servants and employees of defendant corporation had so stretched said woven wire fencing along, upon and across said sidewalk directly in front of said west door in the negligent manner aforesaid, and while in the exercise of ordinary care became entangled in said woven wire fencing, causing plaintiff to trip and fall with such force and violence as to throw plaintiff across said sidewalk and out into said main street, while plaintiff was attempting to leave said building and store, where he had been law-

fully in said building and in pursuit of his business in purchasing groceries as aforesaid; . . . that by reason of the negligence of defendant corporation, *its agents and employees,* as aforesaid, that plaintiff was thrown out and upon said main street", etc. (italics ours).

As we understand, the store door was in the west end, but near the south side. Plaintiff's witness Farrell said that the wire started from 3 to 6 feet north of the door and extended south. Hawkins said that he unrolled 40 or 50 feet of the wire and that when plaintiff came out and fell, he, Hawkins, was down at the roll of wire which was 40 or 50 feet south of a point from 3 to 6 feet north of the door. And Hawkins said that he was "about 30 feet from where he (plaintiff) fell."

The negligence alleged was placing the wire on the sidewalk in front of the store door and in failing to warn plaintiff thereof, but the failure to warn is as important as placing the wire on the sidewalk. The corporate defendant would have ▆▆ been liable, even if a stranger had placed the wire, as did Hawkins, provided it had reasonable time in which to ascertain and warn, and failed to do so. It was the duty of Nichols to warn of the presence of the wire if he knew or should have known of its presence. The front of the store had "show windows in it, which are large, ordinary store windows. One standing in the store can look out into the street through those windows. There is nothing there to obstruct the view." Plaintiff's daughter, Elgelina, testified: "My father and the clerk (Nichols) started out and I followed them. The clerk opened the door and I came out by the side of him. I would say we came out about the same time." And plaintiff testified: "Q. Where was she (Elgelina), Mr. Atterbury, when you fell? A. She was just behind the boy that was carrying the groceries." The wire on the sidewalk was from 5 to 8 feet west of the store door. All this tends to show that Nichols was through the door and on the sidewalk when plaintiff fell. The jury could draw the inference that, in the exercise of due care, Nichols could and should have seen the wire and warned plaintiff.

▆▆ "Plaintiff is entitled to the benefit of any evidence offered by defendant which tends to support his theory of the case, and is consistent with his own testimony, but he cannot claim the benefit of any of defendant's evidence which contradicts his own testimony *and* is at war with his own theory of the case" (italics ours). Elkin v. St. Louis Public Service Company, 335 Mo. 951, 74 S. W. (2d) 600, l. c. 603. It is true that the evidence of Hawkins that Nichols preceded plaintiff through the door is contrary to plaintiff's evidence, but recovery on the failure of Nichols to warn, was not *inconsistent* with plaintiff's *theory of recovery.* Recovery is not predicated on who went through the door first, but on placing the wire on the sidewalk and failure to warn. There is no such situation here as to contradiction on *theory of*

14

*recovery* as was in Elkin v. St. Louis Public Service Co., supra; Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S. W. (2d) 626, and other similar cases.

In the present case the petition, the evidence and plaintiff's instruction P-1 (on the hypotheses submitted) are broad enough to cover the negligence of Nichols in failing to warn, that is, the negligence of a servant other than the servant in whose favor the jury found. But instruction P-1, while broad enough to cover the negligence of Nichols in failing to warn, does not direct a verdict against either or both of the defendants, as the evidence justified, but directed a verdict against both defendants. The error, we believe, is one of nondirection in failing to hypothesize the facts upon which a verdict could be found against either defendant. But verdict forms (3) and (4), given by the court, permitted the jury to find for one defendant and against the other, as was done, and the corporate defendant, in its motion for a new trial, did not complain of the verdict forms. Nor did the corporate defendant, in its motion for new trial, complain of the nondirection.

The judgment against the corporate defendant and the judgment in favor of the defendant Hawkins should be affirmed, and it is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.