**Paula SHANNON, Plaintiff-Appellee,**

v.

**HIGH–LOW FOODS, Inc., Defendant-Appellant.**

**No. 12340.**

United States Court of Appeals
Seventh Circuit.

Nov. 26, 1958.

Charles Aaron, Lewis Schimberg, Edward S. Stern, Chicago, Ill., Aaron, Aaron, Schimberg & Hess, Chicago, Ill., of counsel, for appellant.

F. Patrick Conlon, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Defendant appealed from the District Court's entry of judgment on a jury verdict for plaintiff, who sustained personal injuries in falling over a coaster wagon pulled by a boy on the public sidewalk in front of defendant's store.

Defendant contends that the District Court erred in failing to grant defendant's motions to direct a verdict, for judgment notwithstanding the verdict, or for a new trial.

Plaintiff argued that as a customer leaving the store,[1] she was still an invitee; that she was injured through defendant's breach of duty in creating a dangerous condition in that boys with small wagons persistently congregated in front of the store, obstructing the entranceway, in order to solicit delivery service from the defendant's customers. It was plaintiff's position that, as defendant itself offered no delivery service, the boys conferred some benefit on the store, and that, in addition, deposits were paid back on returned bottles, frequently brought into the store itself in small wagons.

If defendant had not itself caused the condition, plaintiff's view was that having knowledge of the danger, defendant breached its legal duty in failing to use ordinary care to control it; in maintaining a nuisance and failing to abate it.

The testimony showed that defendant had complained to the local police station;[2] that on Saturdays when the boys appeared in greater numbers, an off-duty policeman was employed to keep the boys and wagons away from the entrance; and that when the policeman was present, the boys kept their distance. The policeman was temporarily away from the entrance when the plaintiff was injured.

Plaintiff contended that, if defendant had no legal duty at the outset to control the boys and their wagons, defendant had voluntarily assumed that duty in engaging the policeman for whose neglect in leaving the entranceway, defendant was liable.

There were only two occurrence witnesses—plaintiff and her husband. They testified that after completing their shopping in defendant's store at 937 W. 63rd Street, on the south side of 63rd Street, near Sangamon Street, in Chicago, plaintiff's husband left the store followed by plaintiff, whose two young sons held the door for her. There are two adjacent doorways, one an entrance, and the other an exit. Plaintiff was facing north as she left the store. Her husband said that he had got as far as the corner of Sangamon Street, about 25 feet from the doorway, and, while waiting to cross the street, he saw a boy going east pulling a wagon which contained bottles, that the boy made a U-turn around plaintiff, who fell over the wagon. The boy was not identified. Nobody testified that he entered the store or even that he was going into the store.[3] There was no evidence that he was one of the boys who solicited delivery service or that he was in any way related to the business of the store. Plaintiff infers a relationship from the fact that the boy was hauling bottles, the fact that defendant's store paid back deposits on returned bottles, and that the boy made a U-turn to go around her.

In arguing that there was sufficient evidence to warrant submission of this cause to the jury and to uphold the jury's verdict, plaintiff relied on a number of cases which this Court has carefully considered.

1. Plaintiff's own evidence at the trial was that she was about three feet from the entrance. In answer to an interrogatory prior to trial, she said she was four to six feet from the entrance. She testified that she had been carrying eggs which went "flying" when she fell. Three of defendant's employees testified to seeing broken eggs on the sidewalk twenty-five to thirty feet from the entrance. Neither plaintiff nor her husband testified to broken eggs at any other location on the sidewalk.

2. Defendant's store manager testified to having reported the problem to the Englewood Police, who gave very good service in that the squad stopped by every time on its run, and that a man on foot also stopped by.

3. Although plaintiff's husband stated at first that the boy was going into the store at the time of the accident, this was a conclusion which he modified on cross examination. When asked if he knew where the boy was going, he answered, "It seemed like he was going in the store. He was waiting, making up his mind to go in, it looked like to me." In answer to the question: "You don't know actually that he was going into the store, do you?" he said, "No, I don't know exactly if he was going into the store."

In Horner v. Penn Fruit Co., 1951, 169 Pa.Super. 473, 82 A.2d 313, 315, the Superior Court affirmed judgment for plaintiff who was knocked down by a boy, pulling a wagon in front of defendant's store. The Court there held that negligence of the store operator was a matter properly submitted to the jury. The case resembled this one in that numerous youths congregated on the sidewalk to solicit customers to hire them to carry packages. The case differs from that here presented in that the evidence showed plaintiff to have been knocked down by the wagon of a boy crying: "Take your order mister; take your order mister."

There is a further difference, as defendant points out, in that under Pennsylvania law, the owner or tenant in possession is primarily required to keep in repair the sidewalk in front of his property and is liable for negligence in performance of this duty if injury results therefrom. Great Atlantic & Pacific Tea Co. v. Boyles, 3 Cir., 1939, 102 F.2d 343.

Plaintiff places great emphasis on Viands v. Safeway Stores, Inc., D.C.Mun. App., 1954, 107 A.2d 118. That case concerned a customer leaving a store by a recessed double swinging door, who, with one foot still within the doorway, tripped over a small wagon standing on the sidewalk immediately in front of the door. The Court in remanding the case with instructions to award a new trial said that it was for the jury to say whether defendant had properly and sufficiently discharged its duty to employ adequate measures for protection from foreseeable dangers while plaintiff was using the exit doorway and the approach thereto.

Bennett v. Louisville & N. R. Co., 1880, 102 U.S. 577, 26 L.Ed. 235, involved an uncovered hatch opening in the depot floor which was part of a passageway over low, marshy ground, provided by the railroad company for use in going from its station to the wharf at which a steamboat was taking on passengers.

In Cannon v. S. S. Kresge Co., 1938, 233 Mo.App. 173, 116 S.W.2d 559, injury was sustained in a fall on an ill-lighted, uneven, high step or slab which was a part of the exit from the store building.

In Atterbury v. Temple Stephens Co., 1944, 353 Mo. 5, 181 S.W.2d 659, plaintiff fell over mesh chicken wire fencing unrolled on the pavement in front of the store by the store manager. The Court there does speak of liability even had the wire hazard been placed there by a stranger, if there were reasonable time to ascertain and warn and then a failure to do so. In the case here, there was no evidence to indicate whether the boy with the wagon of bottles had ever been in the vicinity of the store before. Plaintiff argues that the boy was taking the bottles into the store and asks where else could he possibly have been taking them. The evidence does not bear this out. It would be equally consistent with the few known facts to conclude that the boy was trying merely to go around the plaintiff in order to continue on his way to some other store.

In Steinberg v. Northern Illinois Tel. Co., 1931, 260 Ill.App. 538, plaintiff was injured on a staircase leading from the street, the only means of access to defendant's telephone exchange on the second floor.

In Rasmussen v. National Tea Co., 1940, 304 Ill.App. 353, 26 N.E.2d 523, plaintiff was hurt by a piece of old pipe projecting from a concrete step leading from the street to a storeroom in which a rummage sale was to be held.

Although the injury was the act of a third person, plaintiff argues that the action was foreseeable, as in Neering v. Illinois Central R. Co., 1943, 383 Ill. 366, 50 N.E.2d 497, where the Court held that defendant railroad ought reasonably to have anticipated the danger to a woman passenger waiting for a train in the early hours of the morning in an isolated, unguarded station close to a well known "Hobo Jungle", whose denizens frequently sought shelter in the station waiting

room and about whom plaintiff had often complained. Likewise in Ney v. Yellow Cab Co., 1954, 2 Ill.2d 74, 117 N.E.2d 74, 51 A.L.R.2d 624, the majority held it a question for the jury whether defendant ought to have foreseen that its taxicab left unattended with engine running and key in the ignition, in violation of Statute, might be stolen and used to damage property. Plaintiff also cites Village of Carterville v. Cook, 1889, 129 Ill. 152, 22 N.E. 14, 4 L.R.A. 721, wherein plaintiff sued a municipal corporation for injury sustained when, jostled by another, he fell from a sidewalk, raised six feet above the ground, which lacked a guard railing; and Koch v. City of Chicago, 1938, 297 Ill.App. 103, 17 N.E.2d 411, where one child splashed into another's eyes a caustic solution which the city had allowed to remain exposed and unprotected in the base of a signal post in disrepair for ten to twelve days.

In McHugh v. Hirsch Clothing Co., 1941, 308 Ill.App. 272, 31 N.E.2d 326 and Smith v. Kroger Grocery & Baking Co., 1950, 339 Ill.App. 501, 90 N.E.2d 500, 20 A.L.R.2d 1, defendants directly created the danger by inviting a huge crowd, for whom there was inadequate space, to attend a sale, in one case; and, in the other, by urging customers to scramble for a scarce item thrown toward them.

Ellguth v. Blackstone Hotel, Inc., 1951, 408 Ill. 343, 97 N.E.2d 290, concerned injuries suffered from a projecting metal object in an unlighted tunnel passage over which defendant had control.

In Zoloth v. Wacker-Wabash Corp., 1946, 328 Ill.App. 564, 66 N.E.2d 443, plaintiff stepped out of an automobile in which he was a guest and fell over the edge of a wooden ramp erected, without guard rail or warning, on a public street, and used by defendant garage operator for reception of automobiles from its patrons.

In Geraghty v. Burr Oak Lanes, Inc., 1955, 5 Ill.2d 153, 125 N.E.2d 47, plaintiff, on his way into a bowling alley, tripped over a telephone pole and railroad tie hidden by weeds one to three feet high, in an adjacent parking lot maintained for use of the bowling alley patrons.

In Bogovich v. Shermer, 1958, 16 Ill. App.2d 197, 147 N.E.2d 711, defendant himself had slipped on icy pavement leading from his store when he asked for help in carrying out cash registers because of a fire in the building. He did not warn plaintiff who came to his assistance and who, in turn, fell and sustained injury.

In support of the theory that defendant undertook a duty gratuitously but performed it with inadequate care, plaintiff cites Triolo v. Frisella, 1954, 3 Ill. App.2d 200, 121 N.E.2d 49, where defendants cut down a tree which in falling broke a high tension electrical wire which electrocuted the deceased; and Roesler v. Liberty National Bank of Chicago, 1954, 2 Ill.App.2d 54, 118 N.E.2d 621, where defendant landlord volunteered repairs to plaintiff tenant's stairway. The Court there held when a step gave way under plaintiff that it was a question for the jury whether the work had been negligently performed.

In Menolascino v. Superior Felt & Bedding Co., 1942, 313 Ill.App. 557, 40 N.E. 2d 813, the nuisance of which complaint was made was one created by defendant in discharging great quantities of lint, fluff and nap into the air.

All of these cases are distinguishable on facts from the case at hand. This accident did not happen in defendant's store or the entrance to it. The evidence did not show defendant to be in control of the sidewalk adjacent to its store entrance, or of the boy over whose wagon plaintiff fell; or that defendant itself created any defects or obstacles on the sidewalk or the approaches to its store. The boy whose wagon was involved in the accident was not even identified as one of those soliciting employment, nor was it shown that defendant could, or should have foreseen or prevented the occurrence.

It is this Court's judgment that the evidence failed as a matter of law to

justify the jury's finding this defendant guilty of negligence, and, accordingly, the Trial Court erred in denying defendant's motions for directed verdict or for judgment notwithstanding the verdict.

The judgment of the Trial Court is therefore reversed.

FINNEGAN, Circuit Judge.

I concur in the result.