Karen Schnuringer WILLIAMS,
Plaintiff-Appellant,

v.

VENTURE STORES, INC. and Ronald
Eads, Defendant-Respondent.

No. 44356.

Missouri Court of Appeals,
Eastern District,
Division One.

May 29, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 12, 1984.

Kenneth K. Vuylsteke, St. Louis, for plaintiff-appellant.

Eugene K. Buckley, St. Louis, for defendant-respondent.

STEPHAN, Judge.

Plaintiff Karen Schnuringer Williams appeals from the trial court's granting of judgment in favor of Venture Stores, Inc., notwithstanding the verdict. The action was based on a claim for actual and punitive damages arising out of an alleged false arrest and imprisonment against Venture Stores, Inc., and defendant Ronald Eads, security manager for Venture Stores, Inc. The jury returned a verdict for Eads, but against Venture in the amount of $5,000 actual and $15,000 punitive damages. The trial court granted Venture's post-trial motion. We affirm.

On September 29, 1978, plaintiff and Debbie Westscott were employed at defendant Venture's store on Dunn Rd. in St. Louis County. They worked at the service desk from 5 p.m. until 10:30 p.m. At approximately 10:00 p.m., the store's closing time, plaintiff and Westscott began emptying the three cash registers and the check-cashing drawer. They placed the money in bags to be transferred to the cash office.

Shortly before 10:00 p.m., Douglas Williams, former Venture employee and plaintiff's then boyfriend, talked to plaintiff at the service desk for ten or fifteen minutes; three or four minutes of which time, Westscott was away from the service desk. Thereafter, plaintiff and Westscott took the cash bags in a cart to the cash office. The office was locked, and they waited in the hall with other employees and former employee Jim Woodruff. During this time, Westscott left to close the switchboard and plaintiff left to mail some papers. Westscott and plaintiff returned to the office at about the same time and turned the bags in to the cash office without counting them.

The following morning, September 30, 1978, it was discovered that a money bag, containing about $5,000 from the check-cashing drawer, was missing. Colleen Thurman, a security supervisor for Venture, and defendant Ronald Eads, Venture's district security manager, launched an investigation to determine whether the bag had been misplaced. When the money bag was not located, Westscott and plaintiff were asked to take a polygraph test. The polygraph operator concluded that plaintiff failed to do well on the test, and so informed Venture. Thurman and Eads advised plaintiff of the test results. When plaintiff offered an explanation for her performance, arrangements were made for her to take a second test. Plaintiff subsequently declined to take the second examination.

On Thursday, October 5, 1978, Venture reported to the St. Louis County Police Department that a money bag was missing and that an internal investigation revealed that the bag was not misplaced. The police were also informed that plaintiff and Westscott were the cashiers last in possession of the bag; that Westscott, not plaintiff, had passed the polygraph test, and that both plaintiff and Doug Williams had the opportunity to steal the missing money bag. Detective Joseph Messina of the St. Louis County Police Department began conducting his own investigation after talking with Colleen Thurman. She told Detective Mes-

sina that she suspected plaintiff and Doug Williams of committing the theft of the money bag, in part because of their opportunity to do so and plaintiff's performance on the polygraph test. Detective Messina interviewed several other Venture employees and spoke to the polygraph operator as well as defendant Eads. Eads told Messina that, on the basis of his interview with plaintiff after she took the polygraph test, his impression was that she committed the theft and was on the verge of admitting it. The following day, Messina traveled to plaintiff's residence to talk to her. She refused to talk to him, apparently on the advice of her attorney. Messina then placed her under arrest and took her into custody. She was booked, fingerprinted, photographed and detained at the St. Louis county jail. A warrant was applied for but refused, and she was released.

The trial court granted Venture's motion for judgment notwithstanding the verdict because the verdict against Venture and for Eads was inconsistent.

The theory of plaintiff's case against Venture was based upon the claim that Ronald Eads instigated plaintiff's arrest by Detective Messina. Instructions 4 and 7 each directed the jury to find against Venture and Eads, respectively, if "defendant Eads intentionally instigated the restraint of plaintiff against her will." Thus, by virtue of plaintiff's submission, Eads' intentional instigation became the key element of plaintiff's right of recovery against either defendant.[1]

By electing to submit her case against Venture solely on the basis of Eads' actions, plaintiff abandoned any other theory of recovery which may have been available to her through her pleadings. *Quinn v. St. Louis Public Service Company*, 318 S.W.2d 316, 323 (Mo.1958); and see *Shurtz v. Jost*, 647 S.W.2d 580, 582 (Mo. App.1983). It has long been the law of this State that, when recovery is sought against an employer and an employee on the basis of the employee's wrongful act, exoneration of the employee exonerates the employer. *McGinnis v. Chicago, R.I. & P. Ry. Co.*, 200 Mo. 347, 98 S.W. 590, 593–594 (1906). The continuing viability of *McGinnis* is traced in *Ward v. Lemke*, 602 S.W.2d 33, 35 (Mo.App.1980), wherein "the long line of cases following that principle" is set forth.[2]

Plaintiff has pointed to no trial error which could have occasioned the verdict in favor of Eads; in fact, plaintiff's principal brief specifically states that she appeals

---

1. Instruction 4 read as follows:

   Your verdict must be for plaintiff and against defendant Venture Stores, Inc. if you believe:
   First, defendant Eads intentionally instigated the restraint of plaintiff against her will,
   Unless you believe plaintiff is not entitled to recover by reason of Instruction Number 6.
   Instruction 7 read as follows:
   Your verdict must be for plaintiff and against defendant Ronald Eads if you believe:
   Defendant Eads intentionally instigated the restraint of plaintiff against her will,
   Unless you believe plaintiff is not entitled to recover by reason of Instruction Number 9.
   Instructions 6 and 9 referred to in the foregoing were forms of MAI 32.13 which articulates the affirmative defense of reasonable detention by a merchant of a suspected thief upon reasonable cause. § 537.125, RSMo 1978.

2. The "principle" of *McGinnis* was not followed in *Ward* for the reason that the employer's post-trial motion alternatively sought judgment notwithstanding the verdict or a new trial. Inas-

much as a new trial was granted, the court said, "We are without authority to consider that contention ...," i.e. that a verdict in favor of a truck driver in a rear-end collision case exonerated his employer of negligence on the theory of respondeat superior. This, for the reason that the employer, having been granted the alternative post-trial relief it sought, was not a party "aggrieved" by the judgment of the trial court within the meaning of § 512.020, RSMo 1978, and could not present the issue on appeal. The employer's appeal was therefore, dismissed. It was said in *Ward*, however, that upon retrial "plaintiffs may no longer submit against Manatt's [employer] based on any theory that Manatt's is liable for any acts or nonaction by Lemke [the employee]." *Id.*, 36. Unlike *Ward*, the trial court in this case did not order a new trial, although Venture sought such relief in the alternative to judgment notwithstanding the verdict. In the instant case, the trial court entered judgment for Venture because of the inconsistent verdict. Plaintiff's appeal thus squarely presents the question whether such entry of judgment was error.

"only the granting of judgment notwithstanding the verdict in favor of Venture Stores, Inc." Cf. *Burtrum v. U-Haul Company of Southern Missouri,* 658 S.W.2d 70, 73 (Mo.App.1983). Accordingly, we see no reason to deviate from the rule of *McGinnis,* supra: the verdict in favor of Eads warranted the trial court's entry of judgment for Venture, notwithstanding the verdict. *Burtrum,* supra, 72; *Moppin v. Moppin,* 643 S.W.2d 41, 45 (Mo.App.1982).

■ Apparently recognizing that Eads' vindication by verdict is now final, plaintiff tells us in the reply brief that she would not object to a new trial in which other methods of establishing Venture's liability could be explored. In this connection, she speculates that intentional instigation of her arrest might be shown through the conduct of Venture employee Colleen Thurman or the polygraph operator, or even that Venture's "policy of internal investigation instigated the arrest." Arguing that the court in *Ward v. Lemke,* supra, 36, noted that, upon retrial, liability could be predicated upon the employer's negligent maintenance of the vehicle's brakes, plaintiff claims she should be allowed to attempt to establish one of the alternate theories of liability noted above. Our examination of the record fails to indicate any substantial likelihood that plaintiff would be able to make a submissible case on any of the theories mentioned, and we would be disinclined to order a new trial for that reason alone. Cf. *Kuenzle v. M–K Bus Lines,* 644 S.W.2d 380, 381 (Mo.App.1982). We predicate our disposition of this issue, however, on a more fundamental concept: we do not reverse a judgment absent a finding that the trial court erred against the appellant, in a manner materially affecting the merits of the action. Rule 84.13(b).

The trial court did not err in entering judgment for Venture Stores, Inc., notwithstanding the verdict; we, therefore, affirm.

SIMON, P.J., and KAROHL, J., concur.